IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NATIONWIDE LIFE INSURANCE
COMPANY,
        Plaintiff,

v().                                  Case No. 2:06-CV-405
                                    JUDGE EDMUND A. SARGUS, JR.
                                    Magistrate Judge Mark R. Abel

STATE OF MISSOURI, OFFICE OF
ADMINISTRATION, et al.,
        Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of the Defendants' Motion to Dismiss. (Doc. #7). For the reasons that follow, the motion is granted.

### I.

Plaintiff, Nationwide Life Insurance Company ["Nationwide"], brings this action seeking declaratory judgment pursuant to 28 U.S.C. § 2201 with respect to a contract between Nationwide and Defendants State of Missouri Office of Administration and Missouri State Public Employees Deferred Compensation Commission. Nationwide is an Ohio corporation and purports to invoke this Court's diversity jurisdiction. 28 U.S.C. § 1332. Defendants move to dismiss Nationwide's Complaint for lack of subject matter jurisdiction and for improper venue.

Nationwide and Defendants entered into a contract on June 1, 1996 following a "Request for Proposal" ["RFP"], pursuant to which Nationwide offered a variable annuity product and a fixed annuity product to the Missouri State Public Employees Deferred Compensation Fund ["the

Fund"]. The Defendant Missouri State Public Employees Deferred Compensation Commission ["Commission"] is an entity created by Missouri statute that is charged with the responsibility of administering the Fund. (*Complaint* at ¶ 3). The dispute in this case involves the fixed annuity account under the RFP.

Nationwide alleges that on May 23, 2006, Henry T. Herschel, chief counsel for the Missouri Office of Administration and a member of the Commission, sent a letter to Nationwide "demand[ing] that the assets in the Fixed Annuity Account be liquidated in a lump sum and 'with no market value adjustment.'" (*Id.* at ¶ 49). Nationwide alleges that "under the terms of the RFP Contract . . . Nationwide has the right to apply and enforce the MVA [market value adjustment] in response to Defendants' termination of the Fixed Annuity Account and election to receive distribution of such assets in a lump sum payment." (*Id.* at ¶ 52).

Nationwide's Complaint seeks declaratory relief "declaring and confirming [Nationwide's] rights under the RFP Contract as renewed and as amended, including a declaration that it has the right to enforce the express terms of the MVA provisions . . . and that it has no obligation to the Defendants to refrain from applying such a charge." (*Id.* at ¶ 58). Nationwide asserts that this Court has jurisdiction under 28 U.S.C. § 1332 on the basis of diversity of citizenship with the amount in controversy in excess of $75,000. (*Id.* at ¶ 4). Nationwide further asserts that venue is proper because "Defendants directed communications to Nationwide challenging Nationwide's right to the MVA charge" to Nationwide's headquarters in Columbus, Ohio. (*Id.* at ¶ 5).

The Defendants move to dismiss Nationwide's Complaint claiming that the suit is barred by the Eleventh Amendment to the United States Constitution, there is no diversity of

2

citizenship, and venue is improper. Nationwide opposes the motion.

## II.

**A. Eleventh Amendment.**

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Pursuant to the Eleventh Amendment, each state is a sovereign entity and is not subject to suit by a private individual in federal court without its consent. *Employees of the Dept. of Public Health & Welfare v. Dept. of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973).

State sovereign immunity is, however, not absolute. The Eleventh Amendment does not bar a suit by a private litigant seeking prospective injunctive relief against state officers charged with an ongoing violation of federal law. *See Ex parte Young*, 209 U.S. 123, 167 (1908); *Lawson v. Shelby County, Tennessee*, 211 F.3d 331, 335 (6th Cir.2000). Second, the state may waive its immunity under the Eleventh Amendment and consent to suit in federal court. *See Green v. Mansour*, 474 U.S. 64, 68 (1985); *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985). Third, Congress may abrogate the state's sovereign immunity pursuant to its power under § 5 of the Fourteenth Amendment to enact legislation protecting constitutional rights from infringement by the states. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996). None of these three exceptions applies to the instant action.

The Defendants argue that the situation at bar is controlled by the Sixth Circuit's recent

decision in *Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005). There, the Court considered whether a state government retirement system for judges in the State of Michigan was an "arm of the State" for purposes of the Eleventh Amendment. Four judges sued various state officials, all with responsibilities for managing the retirement system, claiming that the state's Judicial Retirement Act violated the Equal Protection Clause as well as state law. The Sixth Circuit concluded that Michigan's retirement system for state court judges is an arm of the State. In reaching this conclusion, the Court stated:

> [W]e look[ ]at the following factors: "(1) whether the state would be responsible for a judgment against the entity in question; (2) how state law defines the entity; (3) what degree of control the state maintains over the entity; and (4) the source of the entity's funding." 374 F.3d at 420; *See also Alkire v. Irving*, 330 F.3d 802, 813 (6th Cir.2003); *Dubuc v. Mich. Bd. of Law Examiners*, 342 F.3d 610, 615 (6th Cir.2003); *Brotherton v. Cleveland*, 173 F.3d 552, 560 (6th Cir.1999). Earlier cases adhere to a similar approach, though they break down some of these inquiries into still other questions. *See, e.g., Hall v. Med. Coll. of Ohio*, 742 F.2d 299, 302 (6th Cir.1984) (considering as well "whether the agency is performing a governmental or proprietary function; whether it has been separately incorporated; ... whether it has the power to sue and be sued and to enter into contracts; whether its property is immune from state taxation, and whether the sovereign has immunized itself from responsibility for the agency's operations" (citation and quotations omitted)).

427 F.3d at 359.

In applying the factors, the Court first found that the State would be liable for any judgment against the retirement system that existing funds of the system could not satisfy. Second, the Court found that the State had extensive and detailed control over the retirement system. Third, the Court observed that five members of the board were appointed by Michigan's governor and two other members were state officials. Fourth, the Court concluded that the "retirement system's operations have far more in common with a traditional state function than a

4

local one." *Id.* at 361.

> As we see it, the retirement system is most naturally characterized as an arm of the State. It is a product of state legislation. It is run by state officials or individuals appointed by state officials. It serves state officials – not just all state court judges in Michigan but may of the top government officials in the state. . . . It is funded by the state treasury as well as by contributions from state officials. And if the retirement system faces a monetary shortfall, state legislation requires the state treasurer to make up the difference with state funds.

*Id.* at 355.

In this case, Mo. Rev. Stat. § 105.910 provides for the establishment of the "Missouri State Public Employees Deferred Compensation Fund." The statute provides:

> 1. Sections 105.900 to 105.925 shall provide for the establishment of the "Missouri State Public Employees Deferred Compensation Fund". This fund shall be administered by the Missouri state public employees deferred compensation commission. The commission shall approve any deferred compensation agreement entered into by the state pursuant to sections 105.900 to 105.925 and shall oversee the orderly administration of the fund in compliance with the subsequent provisions of sections 105.900 to 105.925.
> 2. Such commission shall have five commissioners, including one member of the Missouri state house of representatives to be selected by the speaker of the house, one member of the Missouri state senate to be selected by the president pro tempore of the senate, and three other such commissioners to be appointed by the governor of the state of Missouri by and with the advice and consent of the senate. The legislators appointed as commissioners shall serve during their terms of office in the general assembly. The commissioners appointed by the governor shall serve a term of three years; except that, of the commissioners first appointed, one shall be appointed for a term of one year, one shall be appointed for a term of two years, and one shall be appointed for a term of three years. The commission shall annually elect a chairman and shall be required to meet not less than quarterly or at any other such time as called by the chairman or a majority of the commission.

Mo. Rev. Stat. § 105.910.

Missouri statutory law provides further details with regard to the Deferred Compensation Fund. In particular, § 105.905 outlines the procedure for Deferred payment agreements and investment of funds; § 105.915 charges the Office of Administration with administration of the

Fund; § 105.920 limits the "financial liability of the state, or political subdivision under a deferred compensation program . . . in each instance to the value of the particular fixed or variable life insurance or annuity contract, mutual funds or other such investment options purchased on behalf of any employee." Section 105.925 provides that participation in the Plan requires a written agreement "between such employees and the legislative authority of the city, county, institution, or other political subdivision providing for the deferral of such compensation and the subsequent investment and administration of such funds." Finally, § 105.927 provides details for monthly credit in the Plan[1].

The Defendants contend that, similar to the situation in *Ernst*, the State of Missouri has extensive and detailed control over the Deferred Compensation Fund. Defendants assert that they are therefore arms of the State and are entitled to Eleventh Amendment immunity from suit in this Court. The Court considers each of the four factors set forth in *Ernst* in light of the facts in this case.

---

[1]This provision provides:
1. The treasurer of the state of Missouri shall credit an amount not to exceed seventy-five dollars per month, to a plan established pursuant to the provisions of the Internal Revenue Code section 401(a) . . . for each qualified participant in the state's deferred compensation program; provided that funds to be credited to each qualified participant's account shall not exceed the amount appropriated by the general assembly for each qualified participant. Funds so credited shall be held, administered and invested as provided in sections 105.900 to 105.925 and the plan document adopted for the administration of such contributions.
2. For purposes of this section, "qualified participant" means an employee of the state of Missouri who is making continuous deferrals of at least twenty-five dollars per month to the deferred compensation program and has been an employee of the state of Missouri for at least twelve consecutive months immediately preceding the commencement of any amount credited pursuant to this section. The amount credited on behalf of a qualified participant pursuant to this section shall not exceed the amount that the qualified participant contributes to his or her deferred compensation plan.

Mo. Rev. Stat. § 105.927.

### 1. Whether the state would be responsible for a judgment against the entity in question

Defendants argue that a decision in this case could impact the treasury of the State of Missouri. Defendants point to § 105.920, which as noted above, states:

> The financial liability of the state, or political subdivision under a deferred compensation program shall be limited in each instance to the value of the particular fixed or variable life insurance or annuity contract, mutual funds or other such investment options purchased on behalf of any employee.

Nationwide argues that this is not the sort of liability that was at issue in *Ernst*. In *Ernst*, the Sixth Circuit observed that the State of Michigan would potentially be liable for "any judgment against the retirement system that existing funds of the system could not satisfy." 427 F.3d at 359. Since potential liability of the State of Missouri is somewhat more limited, Nationwide argues that the first factor weighs against Defendants. The Court disagrees.

The Sixth Circuit in *Ernst* was careful to observe that, "[w]hile there can be little doubt that the state-treasury inquiry will generally be the most important [factor], it also seems clear that it is not 'the sole criterion for determining whether an agency is a state entity for sovereign immunity purposes.'" 427 F.3d at 364, quoting *S.J.*, 374 F.3d at 421. The Court explained:

> [T]he sovereign immunity doctrine is about money *and* dignity - - it not only protects a State's treasury, but also 'pervasively . . . emphasizes the integrity retained by each State in our federal system.' [*Hess*, 513 U.S.] at 39 . . . . Proving the point: When a State is sued by name in a lawsuit, sovereign immunity bars the lawsuit regardless of whether monetary relief is sought or not, *see Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984); *see also S.J.*, 374 F.3d at 421; when a State or state official is sued in federal court in a lawsuit filed under state law, sovereign immunity bars the lawsuit regardless of whether monetary relief sought, *see Pennhurst*, 465 U.S. at 102; and when state officials are sued solely for prospective injunctive relief, sovereign immunity does not apply even if the injunctive relief may affect the state treasury, *see Edelman*, 415 U.S. at 667. <u>Important as the monetary liability factor may be, it is not the only factor.</u>

7

*Id.* at 365 (emphasis added).

With the foregoing principles in mind, this Court concludes that the first factor primarily supports a showing that Defendants herein are arms of the State. While it is impossible to determine the extent of liability that may befall the State of Missouri in the absence of resolving the underlying merits of the parties' dispute, it is nevertheless apparent that the State is exposed to some liability in relation to the Deferred Compensation Fund.

### 2. How state law defines the entity

The second factor considers how Missouri state law defines the entity seeking immunity. The Defendant Office of Administration is created by virtue of the Missouri Constitution, Article IV, §§ 12, 50. Under Mo. Rev. Stat. § 105.915, the Office of Administration has responsibility for administering the Fund. The Defendant Missouri State Public Employees Deferred Compensation Commission, is an entity created entirely by statute, § 105.910. It is composed of five members, including one member of the Missouri House of Representatives and one member of the Missouri State Senate. The remaining three members are appointed by the Governor. In view of these provisions, it is clear that the Defendants are created and defined entirely by state law. Thus, the Court finds that the second factor weighs in favor of finding Defendants are arms of the State.

### 3. What degree of control the state maintains over the entity

Defendants argue that the degree of control over operations of the Deferred Compensation Fund is similar, if not identical, to the fund in *Ernst*. The Fund is established by statute, Mo. Rev. Stat. § 105.910, and exists for the benefit of Missouri's state employees and officials. Section 105.910 states that "[t]he commission shall approve any deferred

compensation agreement entered into by the state pursuant to sections 105.900 to 105.925 and shall oversee the orderly administration of the fund in compliance with the subsequent provisions of sections 105.900 to 105.925."

In the Court's view, the degree of control exerted by the state is extensive. The control is a matter of state statutory law. In light of the statutory scheme, the Court is not persuaded by Nationwide's argument that the degree of state control is "virtually identical to the type of control any private employer has over its own deferred compensation plan set up for the benefit of its employees." (*Memorandum contra* at 14). Rather, the state plays a large role in oversight and control of the Fund. Thus, the Court finds that the third factor weighs in favor of a finding that Defendants are arms of the state.

### 4. The source of the entity's funding

The Deferred Compensation Fund is comprised of state employees' contributions, state-appropriated matching contributions, and the interest or investment earnings on these two sources. As Defendants point out, both the employee and state contributions come directly from the state treasury.

Nationwide argues that because the bulk of the contributions comes from employees' deferred wages, the source of funding does not come from the state. The Court disagrees. Nationwide again attempts to compare the situation at bar to that of a private employer. What cannot be ignored in this case is that the ultimate source of the money are payments withheld by a state agency from a state employee's public-financial salary. The Court finds that consideration of the four factors leads to the conclusion that the Defendants in this case are arms of the State of Missouri.

9

The Court nevertheless addresses Nationwide's argument that the Fund at issue in this case is similar to the fund considered in *Boatmen's First National Bank of Kansas City v. Kansas Public Employees' Retirement Sys.*, 915 F.Supp. 131 (W.D. Mo. 1996). The Sixth Circuit addressed the same argument in *Ernst*. The Sixth Circuit held that *Boatmen's* was not controlling although it involved "a retirement system that has legitimate parallels to the Michigan retirement system." 427 F.3d at 351 (citation omitted). The Sixth Circuit observed that the decision in *Boatmen's* turned on the fact that no Kansas law obligated or authorized the State of Kansas to satisfy any judgment entered against the Plan to remedy any deficit incurred by the Plan. "[T]he court [in *Boatmen's*] reasoned that the mere 'theoretical possibility' that the Kansas treasury might one day be liable for a judgment . . . failed to make the retirement fund an arm of the State." *Ernst*, 427 F.3d at 365, citing *Boatmen's*, 915 F.Supp. at 137. The Sixth Circuit found that this conclusion "has since been rejected by the Supreme Court, *see Doe*, 519 U.S. at 431 ("[I]t is the entity's *potential* legal liability that is relevant." (emphasis added)). *Id.*

Nationwide urges this Court to disregard the Sixth Circuit's observation in *Ernst* because the Sixth Circuit allegedly misread *Boatmen's*. (*Memorandum contra* at 19). The Court declines to do so. This Court follows *Ernst* as controlling Sixth Circuit precedent. In sum, the Court concludes that the Defendants in this case are arms of the State and are entitled to immunity from suit in this Court pursuant to the Eleventh Amendment.

## B. Diversity of Citizenship and Venue.

In light of the Court's conclusion that the Defendants are immune from suit in this Court under the Eleventh Amendment, the Defendants are not "citizens" of any state for purposes of

10

diversity jurisdiction under 28 U.S.C. § 1332. Since the Court is without jurisdiction, the appropriateness of venue need not be considered. The Defendants' motion to dismiss is meritorious.

### III.

In light of the foregoing, the Defendants' Motion to Dismiss (**Doc. #7**) is **GRANTED**. The Clerk is directed to remove this motion from the Court's pending motions list and close this case.

**IT IS SO ORDERED.**

3-22-2007
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**